IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM M. HOMER, | ) |
| Plaintiff, | ) Civil Action No. 22-1570 |
| | ) Magistrate Judge Maureen P. Kelly |
| v. | ) |
| | ) Re: ECF No. 22 |
| THE PENNSYLVANIA STATE UNIVERSITY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Adam M. Homer ("Homer") brings this action arising out of allegations that he suffered employment discrimination when he sought religious accommodations to his employer's COVID-19 policies. ECF No. 16.

Presently before the Court is a Motion to Dismiss Counts 7-9 of Plaintiff Adam M. Homer's Amended Complaint ("Motion to Dismiss") filed by Defendants Jacqueline Edmondson ("Edmondson"), Missy Hnatkovich ("Hnatkovich"), and the Pennsylvania State University (the "University") (collectively, "Defendants"). ECF No. 22. For the reasons below, the Motion to Dismiss is granted.[1]

I.   FACTUAL BACKGROUND

Homer is a practicing Christian. ECF No. 16 ¶ 9. The University hired Homer as a Facilities Manager on January 15, 2018. Id. ¶ 8. He was later promoted to the position of Physical Plant Manager and Facilities Manager at the campus. Id.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to having a United States Magistrate Judge conduct all proceedings in this case, including the entry of a final judgment. ECF No. 15.

The University closed all of its campuses in March 2020 as part of the nationwide effort to control the spread of COVID-19. ECF No. 24 at 6. Despite the closure, many essential personnel continued to work on campus and wore masks voluntarily. Id.; ECF No. 16 ¶ 12.

At the onset of the pandemic, the University did not initially require masks. ECF No. 16 ¶¶ 11, 13. However, many essential personnel on the University campus were requesting masks and could not find them at local stores. Id. ¶ 12. Homer and his mother made masks for faculty, students, and staff because there were not enough masks on campus. Id. ¶ 13.

In August 2020, the University instituted its first mask mandate policy. The policy, known as "mask-up or pack-up," required all non-union staff, faculty, and students to wear masks. Id. ¶ 14. In July 2021, the University updated this policy to require all individuals, except union employees, to wear masks inside University buildings. Id. ¶ 21.

By August 2021, COVID-19 vaccinations had become more widely available. In response, the University only required all non-union, unvaccinated employees, or employees who did not disclose their vaccination status, to wear masks and test for COVID-19. Id. ¶¶ 23-24; ECF No. 24 at 7. The University did not have a vaccine mandate for employees.[2] ECF No. 16 ¶ 24; ECF No. 24 at 7. The University announced a policy that individuals could seek religious accommodations from the COVID-19 vaccine, testing or masking policies. ECF No. 16 ¶ 25; ECF No. 24 at 7.

Between July 26 and 28, 2021, Hnatkovich, as Regional Human Resources Strategic Partner, had a discussion with Homer and wrote him up for not complying with the University masking policy. ECF No. 16 ¶ 31. At that time, Homer claimed that he was being provided accommodations from his direct supervisor, Dave DeNardo, regarding masking, and that the

---

[2] In his Amended Complaint, Homer alleges that he was terminated for "seeking a religious accommodation to [the University's] compulsory vaccination Policy," ECF No. 16 ¶ 105, but he does not identify any mandatory vaccine policy or when any such policy was implemented in his factual allegations.

2

masking policy was not enforced regularly. Id. Homer alleges that when he raised his desire to explore religious exemptions, Hnatkovich "questioned [him] about his religion, mocked his beliefs, claimed that it was 'politics' and stated that he was 'not in a protected class.'" Id. ¶ 28.

On September 15, 2021, Hnatkovich wrote up Homer a second time for "lying about his vaccine status and his activities prior to quarantine…" Id. ¶ 33. She wrote up Homer a third time for failing to get a timely routine COVID-19 test, as required by University policy. Id. ¶ 34.

Homer claims that he wrote to the University Affirmative Action Office on December 15, 2021, seeking accommodations for the COVID-19 vaccine, testing and masking policies. Id. ¶ 48.

On January 6, 2022, Homer sent another letter to the Affirmative Action Office asserting that he had made multiple attempts to seek accommodation of his religious beliefs, but that Hnatkovich called him "a liar" and denied his religious beliefs. Id. ¶ 49. He also asserts that he had "received no interaction" from the University relative to his accommodation requests as to "DNA testing" and masking. Id. ¶ 50.

On January 10, 2022, Hnatkovich and Edmonson met with Homer. During the meeting, the University terminated Homer's employment for his refusal to comply with the University masking policy in response to COVID-19. Id. ¶ 54.

## II. PROCEDURAL HISTORY

On November 4, 2022, Homer and his wife, Hilary Homer, filed a twelve-count Complaint against the University and individual defendants Melissa Camacho-Heenan ("Camacho-Heenan"), Edmondson, and Hnatkovich. ECF No. 1.[3] On December 20, 2022, counsel for the parties conducted the required meet and confer conference relative to the bases

---

[3] Mrs. Homer was named as a plaintiff in the initial Complaint. ECF No. 1. She is not a named plaintiff in the Amended Complaint. ECF No. 16.

upon which Defendants intended to seek dismissal. ECF No. 3; ECF No. 24 at 10. Thereafter, Defendants filed an initial Motion to Dismiss. ECF No. 5. In response, Homer filed an Amended Complaint and Demand for Jury Trial on February 3, 2023. ECF No. 16. Hilary Homer and Camacho-Heenan are not included as parties in the Amended Complaint. Id.

In his Amended Complaint, Homer brings nine claims. He pleads claims against the University under Title VII of the Civil Rights Act (Counts 1, 2, and 3); claims against all Defendants under the Pennsylvania Human Relations Act ("PHRA") (Count 4, 5, and 6); claims against all Defendants under the Fourteenth Amendment Due Process Clause and Pennsylvania Constitution Article 1 § 11 (Count 7); a claim against the University under the Genetic Information Nondiscrimination Act ("GINA") (Count 8); and a claim against all Defendants under the Fourth Amendment (Count 9). Id. ¶¶ 74-165.

Defendants filed this Motion to Dismiss and Brief in Support on March 20, 2023, in which they only move to dismiss Counts 7, 8, and 9 against all Defendants and Counts 4, 5, and 6 against the individual Defendants. ECF Nos. 22 and 24. Homer filed a Response in Opposition to the Motion to Dismiss. ECF No. 26. Defendants filed a Reply. ECF No. 28.

The partial Motion to Dismiss is now ripe for consideration.

### III. LEGAL STANDARD

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126,

4

143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, labels, conclusions, and "a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]" of his claim) (internal quotations omitted).

## III. DISCUSSION

Defendants move to dismiss Counts 7, 8, and 9 of the Amended Complaint on various grounds. They also seek dismissal of Homer's PHRA claims, Counts 4, 5, and 6, against the individual defendants. Each argument will be addressed separately.

### A. Sufficiency of Constitutional Claims (Counts 7 and 9)

#### 1. Deprivation of Liberty Interest in Reputation (Count 7)

Defendants first move to dismiss Count 7, which includes two claims against all Defendants for deprivation of a liberty interest in reputation under: (1) the Due Process Clause of

the Fourteenth Amendment, and (2) the Pennsylvania Constitution Art. 1 § 11, *et seq*. ECF No. 16 at 38. The Court considers each of these two claims below.

### a. Fourteenth Amendment Due Process Claim

Defendants argue that Homer's Fourteenth Amendment Due Process claim should be dismissed because he fails to allege specific facts to make out a due process claim for deprivation of a liberty interest in reputation. ECF No. 24 at 11-13. Defendants point out that Homer has failed to allege any facts that Defendants publicized any substantially and materially false, stigmatizing statement. Id. at 13.

In response, Homer argues that he has adequately stated a claim for the deprivation of a liberty interest. First, he alleges that he is a practicing Christian, and he was mocked, harassed, threatened, disciplined, and terminated for his beliefs. Id. ¶¶ 9, 17 and 25. He asserts that he was made out to be a pariah, a non-Christian, and a liar for seeking faith-based accommodations. Id. Second, he claims that Edmondson and Hnatkovich segregated unvaccinated employees and those employees who sought a religious exemption. Id. ¶¶ 26, 27. Further, Homer claims that Hnatkovich mocked his beliefs when she was writing him up for noncompliance with the University's COVID-19 policies. Id. ¶¶ 28-31.

In order "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation *plus* deprivation of some additional right or interest." Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006) (citing Paul v. Davis, 424 U.S. 693, 701 (1976)). "This has been referred to as the 'stigma-plus' test." Dee v. Borough of Dunmore, 549 F.3d 225, 233-34 (3d Cir. 2008).

To satisfy the "stigma" prong, "a plaintiff must show (1) that the stigmatizing statement was made publicly, and (2) that the statement was substantially and materially false." Kocher v.

Larksville Borough, 548 F. App'x 813, 820 (3d. Cir. 2013) (citing Hill, 455 F.3d at 236); Ersek v. Twp. of Springfield, 102 F.3d 79, 83-84 (3d Cir. 1996) ("For government action to infringe the 'reputation, honor, or integrity' of an individual, that government action first must involve a publication that is substantially and materially false."). As to the second prong of a "stigma-plus" test, a plaintiff need only show that he was terminated or constructively discharged from employment, regardless of whether he had a property interest in said employment. Hill, 455 F.3d at 238.

Upon review of the Amended Complaint, the Court finds that Homer has failed to allege either of the two requirements to satisfy the "stigma" prong. He has not alleged the publication of a substantial and materially false statement. Thus, he has failed to allege sufficient facts to state a due process claim under the Fourteenth Amendment. In addition, he does not allege that a purported statement by Edmondson and Hnatkovich that caused his discharge or was made incident to it. McCleester v. Mackel, No. 06-120J, 2008 WL 821531, at *19 (W.D. Pa. Mar. 27, 2008). Further, Homer's conclusory allegations relative to the possible loss of some future employment opportunities do not support a reputation based due process claim. See Kahan v. Slippery Rock Univ. of Pa., 50 F. Supp. 3d 667, 711 (W.D. Pa. 2014), *aff'd*, 664 F. App'x 170 (3d Cir. 2016). Therefore, the Motion to Dismiss as to the Fourteenth Amendment claim in Count 7 is granted based on Homer's failure to state a claim.

    **b. Pennsylvania Constitutional Claim**

Defendants also move to dismiss Count 7 of the Amended Complaint because Homer fails to state a claim for relief under Article I, Section 11 of the Pennsylvania Constitution. ECF No. 24 at 13-14. Defendants correctly recognize that rights under Article I of the Pennsylvania Constitution are "not distinguishable from those of the 14th Amendment." Pa. Game Comm'n v.

Marich, 666 A.2d 253, 229 n. 6 (Pa. 1995) (citing R. v. Commonwealth Dept. of Pub. Welfare, 636 A.2d 142, 152-53 (Pa. 1993)); Republican Party of Pa. v. Cortes, 218 F. Supp. 3d 396, 417 (E.D. Pa. 2016) ("Pennsylvania's equal protection and due process provisions are coextensive with the corresponding provisions of the United States Constitution.").

In his Response in opposition, Homer does not address Defendants' argument in support of dismissal. ECF No. 26.

Applying the same analysis used in reviewing Homer's Fourteenth Amendment claim to his claim for relief under Article I, Section 11 of the Pennsylvania Constitution, the Court finds that Homer fails to state a claim for relief.

### 2. Fourth Amendment Illegal Search and Seizure Claim (Count 9)

In Count 9 of the Amended Complaint, Homer alleges that the University's COVID-19 testing policies were unconstitutional. He claims a violation of his Fourth Amendment right against illegal search and seizure, entitling him to a recovery under 42 U.S.C. § 1983. ECF No. 16 at 42-43. Specifically, Homer claims that, as result of the mandated COVID-19 testing, Defendants intentionally intruded upon his privacy when they searched and seized his genetic information and DNA without his informed consent and permitted his DNA to be given to third parties for research purposes only in a compulsory fashion and under threat of termination without justification. Id.

In the pending Motion to Dismiss, Defendants argue that Count 9 should be dismissed for failure to state a claim because Homer fails to plead sufficient facts that the University or individual Defendants violated his Fourth Amendment rights against illegal search and seizure. ECF No. 24 at 14-16. They argue that Homer has no constitutional right to ignore a public health directive during a pandemic. Defendants assert that Homer simply alleges that he was

subjected to the University's masking policy and COVID-19 testing requirements that applied to all non-union staff, and he was disciplined when he failed to comply. Defendants argue that Homer's disagreements with those pandemic-related requirements do not rise to constitutional violations and must be dismissed. Id. Defendants rely on the well-established precedent of Jacobson v. Massachusetts, 197 U.S. 11, 36-38 (1904), where the United States Supreme Court held that mandatory vaccination does not violate substantive due process. They also point to recent circuit court decisions holding that university mask wearing and periodic COVID-19 testing policies pass constitutional muster. ECF No. 24 at 16-17.

In opposition, Homer argues that he has a reasonable expectation of privacy in his DNA where he did not give informed consent to the seizing of his saliva or mucous samples in COVID-19 testing, and it was given to a third-party for research purposes without his consent. ECF No. 26 at 8-13. He also asserts that Defendants had no justification of seizing and distributing his DNA to third parties, and, as such, Defendants were intentionally and deliberately indifferent to his privacy rights. Id. at 10. Further, Homer claims that he did not and could not have consented to such a search and seizure because he was not aware of his right not to agree to the search, seizure, and disclosure of his DNA. Id.

Given that Homer alleges a violation of a specific constitutional right found in the Fourth Amendment, his claim "must be analyzed under the standard appropriate to that specific provision." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 843 (1998). The Fourth Amendment protects the "rights of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. "Only government activity that constitutes a 'search' or 'seizure' is regulated by the Fourth Amendment." Christensen v. Cty. of

Boone, 483 F.3d 454, 459 (7th Cir. 2007).  Notably, the Fourth Amendment only protects against *unreasonable* searches and seizures.  Florida v. Jimeno, 500 U.S. 248, 250 (1991).

Here, Homer alleges that the University testing mandate is an unreasonable search of his person.  "When an alleged search is not performed as part of a criminal investigation, the Court may 'turn immediately to an assessment of whether [the search] is reasonable.'"  Gutterman v. Ind. Univ., No. 20-cv-2801, 2021 WL 3913493, at *7 (S.D. Ind. Sep. 1, 2021) (quoting Napierville Smart Meter Awareness v. City of Naperville, 900 F.3d 521, 528 (7th Cir. 2018)) (dismissing a complaint on a Rule 12(b)(6) motion because the search and seizure was reasonable)*, vacated as moot*, 2022 WL 4494171 (7th Cir. June 27, 2022).

Although searches conducted without reasonable suspicion are generally prohibited, exceptions may apply when the government has "special needs, beyond the normal need for law enforcement . . . ."  Griffin v. Wisconsin, 483 U.S. 868, 873 (1987).  Fourth Amendment intrusions unrelated to law enforcement purposes are analyzed under the "special needs" rubric.  See Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 653 (1995).  To determine whether a "special needs" exception applies, a court must balance four factors: (1) the nature of the privacy interest affected; (2) the character of the intrusion; (3) the nature and immediacy of the government concern; and (4) the efficacy of this means of addressing the concern.  Id. at 654-64.

Courts have consistently upheld searches and seizures in an array of contexts by "balancing [any] intrusion on the individual's Fourth Amendment interests against its promotion of governmental interests."  Vernonia Sch. Dist. 47J v. Acton, 515 U.S. at 653-54.  COVID-19 vaccination and testing requirements evidence legitimate governmental interests.  See, e.g., Roman Cath. Diocese of Brooklyn v. Cuomo, 141 S. Ct. 63, 67 (2020) ("Stemming the spread of COVID-19 is a compelling interest."); Klaasen v. Trustees of Indiana Univ., 7 F.4th 593-94 (7th

Cir. 2021) (finding mandatory vaccination or weekly testing a reasonable condition of enrollment at a university); America's Frontline Doctors v. Wilcox, 21-1243, 2022 WL 1514038, at *11-12, (C.D. Cal. May 5, 2022) (granting motion to dismiss plaintiffs' Fourth Amendment claim relative to COVID-19 testing requirement); Burcham v. City of Los Angeles, 562 F. Supp. 3d 694, 703-704 (C.D. Cal. Jan. 7, 2022) (finding saliva or nasal swab COVID-19 tests are negligible intrusions and weekly testing requirement does not violate the Fourth Amendment); Gold v. Sandoval, 21-480, 2021 WL 5762190, at *3 (D. Nev. Dec. 3, 2021) (nasal swab testing for COVID-19 does not create an intrusion under the skin, does not involve genetic testing, and there is no use for the sample for law enforcement purposes); Streight v. Pritzker, 21-cv-50339, 2021 WL 4306146, at *6-7 (N.D. Ill. Sep. 22, 2021) (denying preliminary injunction because plaintiff had not shown that Fourth Amendment challenge to university policy requiring vaccination or saliva testing was likely to succeed on merits).

In the Amended Complaint, Homer does not show that the University's COVID-19 testing policy would not pass the Fourth Amendment reasonableness balancing test. He does not allege facts, which, if taken as true, would establish that the University's COVID-19 testing policy intrudes on his Fourth Amendment interests in a manner that outweighs the University's promotion of legitimate governmental public health interests during a pandemic. Therefore, he fails to state a claim for relief under the Fourth Amendment.

### B. Genetic Information and Nondiscrimination Act Claim (Count 8)

In Count 8, Homer claims that the University violated GINA. GINA prohibits an employer from discriminating or taking adverse actions against an employee "because of genetic information with respect to the employee." 42 U.S.C. §§ 2000ff(a)(1), (2). Under GINA, it is

also unlawful "for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee," with some exceptions. Id. § 2000ff-1(b).

For purposes of GINA, "genetic information" means information about the "genetic tests" of an individual or family members, and information about the "manifestation of a disease or disorder in family members of such individual." Id. § 2000ff(4)(A). "Genetic test," in turn, "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." Id. § 2000ff(7)(A).

In support of the Motion to Dismiss, Defendants argue that Homer fails to state a claim under GINA because he erroneously premises his GINA claim on the allegation that testing employees for the COVID-19 virus constitutes "genetic" testing under the statute. ECF No. 24 at 16-17.

Homer opposes the Motion to Dismiss on this ground. He contends that he does make out a claim under GINA because his DNA was extracted for research purposes, and his employment was terminated for seeking accommodations for the same. ECF No. 26 at 13. Homer asserts that Defendants misinterpret his claim, in that he avers that the University took saliva/mucosal samples and gave them to Spectrum DNA without his informed consent. The University then permitted Spectrum DNA to use the samples for research purposes. Id. at 14.

In the Reply, Defendants correctly point to two recent COVID-19 related decisions where the district courts held that COVID-19 tests are not genetic tests. In Baum v. Dunmire Prop. Mgmt., Inc., No. 21-964, 2022 WL 889097 (D. Colo. Mar. 25, 2022), the United States District Court for the District of Colorado granted a motion to dismiss a GINA claim because "contracting COVID-19 is not a disease caused by a 'genetic disposition.'" Id. at *7. Similarly, in Gross v N. Dak. Univ. Sys., No. 31-206, 2022 WL 2612121 (D. N.D. Jan. 10, 2022), the

United States District Court for the District of North Dakota held that a former employee's conclusory allegations against his former employer that he was terminated because of detection or false detection of the COVID-19 virus were insufficient to allege conduct based on anything that would constitute genetic information for purposes of GINA.  Id. at *3.  There, the district court held that if it had subject matter jurisdiction, the GINA claim should be dismissed for failure to state a claim on which relief could be granted.  Id.

A recent decision of another district court within the Third Circuit is instructive.  In McKinley v. Princeton Univ., No. 22-5069, 2023 WL 3168026 (D. N.J. Apr. 28, 2023), the district court in New Jersey addressed a similar issue in ruling on motion to dismiss related to a GINA claim.  There, the district court held:

> Plaintiff fails to allege that Defendant terminated her employment due to her genetic information or that she was classified in a way that deprived her of employment opportunities due to her genetic information.  (*See generally* Compl.)  In particular, Plaintiff's Complaint fails to allege any facts suggesting her saliva samples collected by the Defendant for COVID-19 testing were actually utilized for any purpose other than testing for COVID-19.  *See Taylor. Vanderbilt Univ.*, No. 22-465, 2023 WL 2398761, at *8 (M.D. Tenn. Jan. 23, 2023) (explaining that, in the context of COVID-19 testing, a GINA claim fails where a plaintiff does not "allege that [d]efendant coordinated or otherwise participated in the analysis of her genetic information.")  Moreover, Plaintiff has not successfully pled that the COVID-19 tests Defendant mandated qualify as genetic tests under GINA.  (*Id.*) (explaining, for example, that Vault and Shield T3 tests used to identify COVID-19 are not "genetic tests as defined by GINA").

Id. at *3.  As a result, the district court granted the motion to dismiss the GINA claim.  Id.

Upon review, the Court finds that Homer has failed to allege that the University terminated him due to his genetic information or that he was classified in a way that deprived him of employment opportunities due to his genetic information.  Homer also fails to allege specific facts that his saliva or mucous collected for COVID-19 testing was actually used for any

purposed other than COVID-19 testing. He fails to allege any specific analysis or use of his genetic information. Therefore, the Motion to Dismiss the GINA claim is granted.

### C. Claims against Individual Defendants

Along with the University, Homer names Hnatkovich and Edmondson in Counts 4, 5, 6, 7 and 9. ECF No. 16 at 30 – 40, 42 – 44. Defendants move to dismiss the claims against Hnatkovich and Edmondson, as individual Defendants, on multiple grounds.

First, as to Counts 7 through 9, Defendants argue that Homer fails to state a claim, for the reasons discussed. Defendants also argue that the Amended Complaint fails to allege facts to establish that Hnatkovich and Edmondson are state actors. ECF No. 24 at 19.[4]

Second, as to Homer's PHRA claims in Counts 4, 5 and 6, Defendants argue that the PHRA allows claims against individuals only when those individuals aided and abetted violations of the PHRA. Defendants assert that Homer only alleges actions by the University in Counts 4, 5 and 6 and does not allege facts to support claims against the two individuals for aiding and abetting violations of the PHRA. Id.

In his Response in opposition to the pending Motion to Dismiss, Homer does not address Defendants' state actors argument. As to the requirement of factual averments of aiding and abetting violations of the PHRA, Homer asserts that he "has properly averred, or at the very least it may inferred from the facts…" ECF No. 26 at 14.

Upon review, the Court finds that the Motion to Dismiss Homer's claims against the individual Defendants should be granted. For the reasons discussed, Homer fails to state a claim upon which relief can be granted in Counts 7 and 9.

---

[4] The Court notes that Homer does not name the individual Defendants in Count 8 of the Amended Complaint. Count 8 names only the University as the defendant. Therefore, the Court need not address this basis of the Motion to Dismiss as it relates to Hnatkovich and Edmondson with respect to Count 8.

Further, as to Counts 4, 5 and 6 of the Amended Complaint, Homer has failed to identify any conduct specifically attributable to Hnatkovich or Edmondson, yet alone specific facts relative to purported conduct aiding and abetting violation(s) of the PHRA. Therefore, the individual Defendants should be dismissed from this case.

## IV. CONCLUSION

For these reasons, the Motion to Dismiss is granted. These claims are dismissed.

1. Claims against Hnatkovich and Edmondson under the PHRA (Counts 4, 5, and 6);
2. Claims against all Defendants under the Fourteenth Amendment Due Process Clause and Pennsylvania Constitution Article 1 § 11 (Count 7);
3. Claim against the University under GINA (Count 8); and
4. Claim against all Defendants under the Fourth Amendment (Count 9).

"If a complaint is vulnerable to Rule 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips, 515 F.3d at 236. Because it appears that leave to amend would be futile as to Homer's GINA claim and Fourth Amendment claim, Counts 8 and 9 are dismissed with prejudice.

Because the Court is unable to state that Homer would be unable to state any viable claim relative to Counts 4, 5, 6 and 7, however, those claims are dismissed without prejudice. To the

extent he can cure the deficiencies identified, Homer is granted leave to amend his Complaint as to these claims, only, within 14 days.

      An appropriate Order follows.

Dated: August 10, 2023

BY THE COURT:

*/s/ Maureen P. Kelly*

MAUREEN P. KELLY
UNITED STATES MAGISTRATE JUDGE